# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| JOHN DOE, | ) |
| ` | ) |
| And | ) |
| | ) Civil Action No: |
| JANE DOE, | ) |
| | ) |
| | ) Judge: |
| *Plaintiffs*, | ) |
| | ) Magistrate Judge: |
| v. | ) |
| | ) |
| STEWART COUNTY, | ) |
| TENNESSEE, | ) |
| | ) JURY DEMAND |
| And, | ) |
| | ) |
| DANA SALTKILL | ) |
| | ) |
| *Defendants.* | ) |

## COMPLAINT

1. Plaintiff brings this 42 U.S.C. § 1983 action alleging that Defendants Stewart County, Tennessee and Stewart County Sheriff's Deputy Dana Saltkill have violated Plaintiffs' constitutional right against the unwanted and unwarranted disclosure of private sexual information. Plaintiffs seek damages and other appropriate relief for these violations of their constitutional rights.

## **PARTIES**

2. **Plaintiff John Doe**[1] is an adult resident of Rutherford County, Tennessee.

3. **Plaintiff Jane Doe** is an adult resident of Rutherford County, Tennessee.

---

[1] Plaintiffs will be filing a motion to proceed under pseudonym status once Defendants' Counsels enter appearance in this case.

1

4. **Defendant Stewart County, Tennessee ("Stewart County")** is a municipal governmental entity organized under the laws of the State of Tennessee and located in Stewart County, Tennessee.

5. **Dana Saltkill ("Investigator Saltkill")** is an adult resident of Stewart County, Tennessee. Investigator Saltkill is a Sheriff's Deputy with the Stewart County Sheriff's Office, who undertook all actions at issue in this case under color of law.

## JURISDICTION AND VENUE

6. This Court has federal question jurisdiction over the federal claims in this matter pursuant to 28 U.S.C. § 1331. This Court has supplementary jurisdiction over the state claims in this matter pursuant to 28 U.S.C. § 1367. Venue lies in this district pursuant to 28 U.S.C. § 1391(b)(2) because Defendants reside in this district and the events at issue in this lawsuit occurred in this district.

## FACTUAL BACKGROUND

### A. Background

7. Plaintiff John Doe is a Lieutenant Colonel in the United States Army National Guard. He is a professional, and a father. John Doe is unmarried. He has no criminal record.

8. Plaintiff Jane Doe is a Lieutenant Colonel in the United States Army National Guard. She is a professional, and a mother. Jane Doe is unmarried. She has no criminal record.

9. Both John and Jane Doe are primarily engaged in their civilian careers, with only part-time obligations to the Army National Guard ("the Guard").

10. John and Jane Doe's status with the Guard is under Title 32, meaning that they are generally not on active duty. They generally serve only part time, but can also be called up in the case of an emergency.

11. John and Jane Doe are in an adult, consensual romantic relationship with each other.

### B. Opryland Hotel Weekend

12. In October 2024, John and Jane Doe spent the weekend at the Opryland Hotel with two friends of theirs, D.R.[2] and D.R.'s wife.

13. D.R., like John and Jane Doe, serves in the Guard.

14. Neither John Doe, Jane Doe, nor D.R. were on duty during the Opryland Hotel weekend.

15. During this weekend at the hotel, John and Jane Doe engaged in consensual sexual intercourse with each other, D.R., and D.R.'s wife in the privacy of the hotel room ("the Opryland Hotel episode.").

16. Unbeknownst to John and Jane Doe, and without their consent, D.R. made a video recording of the Opryland Hotel episode ("the Opryland Hotel video").

### C. D.R.'s Legal Troubles

17. On the morning of February 10, 2025, D.R. was arrested by the Stewart County Sheriff's Office and charged with domestic violence offenses for an incident related to his wife.

18. The same morning, Stewart County Sheriff's deputies executed a search warrant on D.R.'s office and seized various documents, records, and information.

19. One of the items seized by Stewart County was D.R.'s cellphone.

20. On information and belief, Stewart County deputies then enlisted the assistance of the Tennessee Bureau of Investigation ("TBI") to extract the contents of D.R.'s cellphone.

21. On information and belief, TBI agents extracted the contents of D.R.'s cellphone, reviewed them, and became aware of the Opryland Hotel episode and video.

---

[2] Plaintiffs' pseudonym motion will encompass D.R., on the basis that the incident that set in motion the investigation that led to this lawsuit has been expunged.

22. On information and belief, the TBI also provided the extraction files to the Stewart County Sheriff's Office, including the Opryland Hotel video.

23. Investigator Saltkill reviewed the contents of D.R.'s phone, and became aware of Opryland Hotel episode and video.

24. At some point Saltkill interviewed D.R.'s wife, the alleged victim in the case against D.R., regarding the Opryland Hotel episode and video.

25. D.R.'s wife identified John Doe and Jane Doe as the participants in the Opryland Hotel episode, but emphasized that the episode had been private and that John Doe and Jane Doe were not in any way involved in any wrongdoing. D.R.'s wife begged Saltkill to leave John Doe and Jane Doe out of the investigation.

### D. The Protective Order

26. On February 18, 2025, the Stewart County General Sessions Court issued a protective order prohibiting law enforcement from sharing, distributing, or disclosing any of the "documents, information, or records" obtained from D.R.

27. The TBI agents involved in the case were made aware of the protective order.

28. Investigator Saltkill and other Stewart County Sheriff's Office staff involved in the case were made aware of the protective order.

### E. The Army National Guard Initiates an Investigation into D.R.'s Misconduct

29. On or about February 20, 2025, aware of D.R.'s arrest and criminal charges, Army National Guard unit personnel contacted the TBI to request a copy of D.R.'s criminal charges so that they could file a "serious incident report" pursuant to military regulations.

30. TBI agents discussed D.R.'s case with the Guard personnel over the phone.

31. During the call, a TBI agent violated the protective order by disclosing the existence of the Opryland Hotel video to the Guard personnel.

32. However, another TBI agent present for the call quickly shut that conversation down, explaining that they could not discuss the topic because of the protective order.

### F. Saltkill Violates Plaintiffs' Privacy Rights

33. At some point in late February or early March 2025, Investigator Saltkill, for perhaps salacious reasons, provided the Guard with a copy of the Opryland Hotel video.

34. John and Jane Doe's private act of consensual sexual intercourse did not violate any Tennessee state laws.

35. John and Jane Doe's private act of consensual sexual intercourse, conducted while they were off-duty, did not violate any U.S. military regulations.

36. It was apparent from the circumstances of the video, and from Saltkill's investigation, that the participants in the Opryland Hotel episode considered it to be a private act. It was also apparent that the episode had nothing to do with the charges against D.R.

37. Saltkill had no duty to provide the video to the Guard, and no legitimate investigative purpose for doing so.

38. Saltkill was fully aware of the protective order barring him from distributing the video when he made the choice to do so, which he did in blatant defiance of it.

39. Tennessee's "Unlawful Exposure" statute, T.C.A. § 39-17-318, makes it a criminal offense to distribute a recording of a private sexual act where the circumstances make it apparent that the participants understood the act to be private.

### G. Saltkill's Illegal Disclosure Damages John and Jane Doe's Reputations and Results in an Unfounded Guard Investigation

40. On March 7. 2025, as a result of Saltkill's disclosure and distribution of the Opryland Hotel video, the Guard flagged John and Jane in IPPS-A, the Army's online human resources system.

41. The impact of a "flag" is to block a soldier's ability to obtain a promotion or transfer while the flag is pending.

42. Jane Doe had already been approved for a promotion to the rank of colonel before this incident occurred. For Jane Doe's particular assignment, there are only so many colonel "spots" available, so prior to being flagged she was just waiting for a colonel position to open up, at which point she would have received her promotion. However, until the pending flag is resolved Jane Doe is not eligible for promotion. Consequently, because of Saltkill's illegal disclosure Jane Doe is at risk of missing a promotion opportunity that may not come around again for years to come.

43. John Doe was in the process of being approved for a promotion to the rank of colonel when this incident occurred. John Doe's particular assignment does not require that there be an open "spot" for him to be promoted, and he was on track for a promotion by the fall of 2026. However, with the flag in place this process has been put indefinitely on hold.

44. On April 5, 2025, the Guard notified John and Jane Doe that they were under investigation for alleged "conduct unbecoming an officer, fraternization, extramarital sexual conduct, failure to obey an order or regulation and/or dereliction of duty."

45. John and Jane Doe were not guilty of any such offense, because they were off-duty and not subject to any such military regulations during the Opryland Hotel episode.

46. John and Jane Doe were appointed military counsels, who set about attempting to find out what the charges were based on and how they had come about.

47. John and Jane Does' counsels learned that the charges were based on the improperly disclosed Opryland Hotel video.

48. John and Jane Does' counsels also learned that numerous Guard personnel have viewed the improperly obtained Opryland Hotel video.

49. John and Jane Doe's military counsels are now in the process of seeking the dismissal of the unfounded U.S. Military charges.

50. John and Jane Doe have suffered extreme humiliation and distress from the disclosure of the video, and from the prospect of potentially losing their long, successful careers of having faithfully served in the U.S. military. Even if the unfounded military charges are dropped, the reputational and emotional harm is permanent and will forever stain John and Jane Doe's careers, family lives, and identities.

# CLAIMS FOR RELIEF

## COUNT I: INVASION OF PRIVACY IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION
## (42 U.S.C § 1983)

### (DEFENDANT SALTKILL)

51. Plaintiff hereby reincorporates paragraphs 1 – 50 by reference.

52. Defendant Saltkill illegally disclosed a video to the Guard of Plaintiffs having consensual sexual intercourse in a private place.

53. Defendant Saltkill had no legitimate investigative purpose for the disclosure. Indeed, the alleged victim in the case Saltkill was investigating had explicitly explained that the video was private and that John Doe and Jane Doe had done nothing wrong.

54. Defendant Saltkill was aware prior to his disclosure that a court order had already been issued barring the distribution of the video.

55. Defendant Saltkill made the improper disclosure in his capacity as an investigator for the Stewart County Sheriff's Office, acting under color of law.

56. Defendant Saltkill acted in wanton and intentional disregard for Plaintiffs' rights.

57. Plaintiffs have been severely humiliated and distressed from the disclosure, and face the prospect of suffering severe financial harm and permanent career damage.

## COUNT II: SHERIFF'S STATUTE
## (T.C.A. § 8-8-302)
## (DEFENDANT STEWART COUNTY)

58. Plaintiff hereby reincorporates paragraphs 1 – 50 by reference.

59. Defendant Saltkill, a Stewart County Sheriff's Office investigator, violated Plaintiffs' right to privacy in matters of sexual behavior.

60. Defendant Saltkill's actions were taken under color of law, within the scope of his official duties to the Sheriff's Office.

61. Defendant Stewart County is liable for its Sheriff's deputies' misconduct.

## **REQUEST FOR RELIEF**

**WHEREFORE**, these premises considered, Plaintiffs pray:

1. That the Defendants Answer this Complaint within the time provided by law.
2. That this cause be tried by a jury.
3. That judgment for Plaintiffs enter against the Defendants on each count.
4. That Plaintiffs be awarded nominal, compensatory, and punitive damages against Defendants.
5. That Defendants be ordered to destroy any copies they may still have of the video at issue in this case.
6. That Plaintiffs be awarded attorney's fees and reasonable litigation expenses, including expert witness fees, pursuant to 42 U.S.C. § 1988 and F.R. Civ. Pro. 54(d).
7. That the court costs in this matter be taxed to Defendants.
8. That Plaintiffs be awarded all other relief to which it may appear they are entitled in the interests of justice.

Respectfully submitted,

*s/ Kyle Mothershead*
Kyle Mothershead, BPR 22953
Aaron Rothbaum, BPR 36572
Relentless Advocacy, PLLC
7000 Executive Center Drive, Suite 240
Brentwood, TN 37027
T: (615) 891-3901 / F: (615) 229-6387
E: Kyle@relentlesslaw.com